IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

STANLEY L. BROWN, #267049 )
)
    Plaintiff, )
)
v. ) CIVIL ACTION 2:09-0063-CG-N
)
ROGER GOODMAN, *et al.*, )
)
    Defendants. )

REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a Complaint under 42 U.S.C. § 1983. (Doc. 1; and see doc. 17, Third Complaint, extracted from CO 08-694 (see below)). This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on the Motion for Summary Judgment of Defendants, Dallas County Jail Warden Roger Goodman, and Dallas County Jail Officials Steve Coleman and Lonnie Averette (Docs. 36, 37) and Plaintiff's response thereto. (Doc. 39). After consideration of these pleadings, and for the reasons set out below, it is recommended that the Motion for Summary Judgment of Defendants be GRANTED and that Plaintiff's action be dismissed with prejudice.[1]

I. FACTS AND PROCEEDINGS

Upon a review of the record, the Court summarizes the parties' allegations which are material to the issues addressed in this Report and Recommendation. Plaintiff claims that on

---

[1] Plaintiff has several pending motions which, as a result of the adoption of this Report and Recommendation, will be rendered MOOT. Docs. 39 (Motion for Subpoena), 40 (Motion for Status), 41 (Motion for Status) and 43 (Motion to Appoint Counsel).

1

November 24, 2008, while he was incarcerated at the Dallas County Jail, Defendants Warden Goodman, Steve Coleman[2], and Lonnie Averette[3] transferred Plaintiff from A-Block to E-Block. (Doc. 17 at 4). Subsequently, on the evening of November 28, 2008, while housed in E-Block, Plaintiff was attacked by six or seven fellow inmates, who punched and kicked him in his "head, face, nose, chin and ribs." (Doc. 17 at 4; Doc. 18 at 6-7). According to Plaintiff, the inmates beat him for five or ten minutes during which time "there was not a single officer around or even in the control station." (Doc. 18 at 6). Plaintiff complains that although every cell should have a microphone, the microphone in his cell was not properly working, and thus he was unable to call for help. (Id.).

The following day, on November 29, 2008, when it was discovered that he was injured, Plaintiff was transported to the Vaughn Regional Medical Center where the medical staff examined and x-rayed him, and, according to Plaintiff, discovered that his jaw and another facial bone was fractured. (Id.). Plaintiff claims that the officers were instructed by the doctors at the hospital to bring him back to the hospital in a week, and also to give him certain pills for his condition.[4] (Doc. 1 at 4). However, according to Plaintiff, he was not given the medication, nor was he taken back to the hospital. (Id.). Plaintiff claims that he was denied all medical attention

---

[2] Defendant Dallas County Jail Official Steve Coleman is incorrectly referred to by Plaintiff in the Complaint as "Officer Steave." (Doc. 17 at 4).

[3] Defendant Dallas County Jail Official Lonnie Averette is incorrectly referred to by Plaintiff in the Complaint as "SGT. Loney." (Doc. 17 at 4).

[4] According to the records, the "pills" referenced by Plaintiff are the pain medication, Lortab.

2

by Warden Goodman and the Dallas County Jail.[5] Plaintiff alleges that he "still can't see good out of left eye now and jaw still be hurting a lot (sic)." (Id. at 4).

Defendants offer that Plaintiff did not identify anyone living in "Pod E" as being an enemy to him at the time he was booked, or at any other time prior to the altercation on November 28, 2008. (Doc. 37, Ex. B at 3). Plaintiff, furthermore, did not request to be transferred out of Pod E at any time prior to the altercation. (Id.). Defendant Goodman avers that "[o]n prior occasions, the Plaintiff had been involved in altercations with other inmates in the Dallas County Jail." (Doc. 37, Ex. B at 3). Defendant Goodman also notes that forms requesting medical care are readily available for inmates in the Dallas County Jail, and that Plaintiff did not request any kind of medical care from the date of November 29, 2008, when he was treated for his injuries sustained in the altercation, until May 20, 2009. (Doc. 37, Ex. B. at 3, Ex. H).

Plaintiff has filed three separate Complaints in three separate actions containing the allegations referenced above. (Doc. 5 to 2:08-00694-KD-N; Doc. 1 to 2:09-00063-CG-N; Doc. 1 to 2:09-00064-KD-C). On July 17, 2009, the Court consolidated Brown v. Goodman, 2:09-00063-CG-N and Brown v. Goodman, 2:09-00064-KD-C, ordering the Clerk to statistically close Brown v. Goodman, 2:09-00064-KD-C. (Doc. 16). Additionally, as part of the consolidation, the Court extracted the third Complaint filed by Plaintiff in Brown v. Goodman, 2:08-00694-

---

[5] Although named as Defendants in two of the three Complaints which are now consolidated in the present action, Dallas County Jail and the Dallas County Sheriff's Department have not been served in this action. (Docs. 1, 18). It appears from the Court's docket that on November 3, 2009, these parties may have been erroneously terminated following the consolidation of Civil Action No. 2:09-00064-KD-C and Civil Action No. 2:09-00063-CG-N. However, the Court having found herein that there is no constitutional violation, there is no need to reinstate and serve these parties.

KD-N[6] (Doc. 5), consolidating it with the present action, as it has been found to contain similar allegations. (Id. at 3).

In his three Complaints, Plaintiff alleges that Defendants failed to provide him a safe environment and failed to provide adequate medical treatment following the attack on him by his fellow inmates. (Docs. 1, 17, 18). Plaintiff seeks compensatory damages, as well as for every inmate to receive medical attention from the Dallas County Jail, and for every cell to have a working microphone. (Doc. 1 at 7, Doc. 18 at 9).

In their Answer and Special Report filed on February 16, 2010, Defendants deny that they violated Plaintiff's constitutional rights and assert various defenses including absolute and qualified immunity.[7] (Docs. 36, 37). On February 18, 2010, the Court entered an Order converting Defendants' Answer and Special Report to a Motion for Summary Judgment. (Doc. 38). On March 1, 2010, Plaintiff filed a response in opposition to Defendants' Motion for Summary Judgment, reasserting his claims against Defendants. (Doc. 39). Defendants' motion and Plaintiff's response thereto are now before the Court.

## II. SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment. "[S]ummary

---

[6] In Brown v. Goodman, 2:08-00694-KD-N, Plaintiff's allegations in his first two Complaints concerned conditions of confinement such as sanitation and comfort at the Dallas County Jail from November 8, 2008, until November 29, 2008. In Plaintiff's third Complaint, he raised issues regarding his relocation inside the jail on November 24, 2008, and the inmate attack which follows on November 28, 2008, and thus the Court consolidated that Complaint and the Complaint from 2:09-00064-KD-C into the present action, Brown v. Goodman, 2:09-00063-CG-N.

[7] Having found herein that Plaintiff's allegations do not establish a constitutional violation, the issue of whether, and to what extent, Defendants may be entitled to absolute or qualified immunity is pretermitted.

4

judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact….'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).

The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party. Barfield v. Brierton, 883 F.2d 923, 934 (11th Cir. 1989). However, the Court is only to "make all *reasonable* inferences in favor of the party opposing summary judgment … not to make all *possible* inferences in the nonmoving party's favor." Torjagbo v. United States, 285 Fed. Appx. 615, 619 (11th Cir. 2008) (emphasis in original).

> Rule 56(e)(2) states that:
>
> [w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e).

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (internal citations omitted). "Summary judgment is mandated where a party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc., 508 F.3d 641, 647 (11th Cir. 2007) (citations omitted).

In a civil action filed by an inmate, although drawing "all justifiable inferences in [the inmate's] favor," federal courts

> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

Beard v. Banks, 548 U.S. 521, 529-30 (2006) (internal citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is 'no genuine issue for trial.' " Scott v. Harris, 550 U.S. 372, 380 (2007) (*quoting* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

### III.  DISCUSSION

As discussed above, Plaintiff seeks redress pursuant to 42 U.S.C. § 1983[8] for alleged constitutional deprivations arising out of an attack by fellow inmates and denial of medical care while incarcerated at the Dallas County Jail. (Docs. 1, 17, 18). According to Plaintiff, these deprivations occurred from November 24, 2008, until February 6, 2009, when Plaintiff filed his Complaint. (Doc. 1 at 4).

---

[8] Section 1983 provides in pertinent part that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….

42 U.S.C. § 1983 (1994).

In addressing Plaintiff's claims brought under § 1983, the Court begins its analysis "by identifying the specific constitutional right allegedly infringed…." Graham v. Connor, 490 U.S. 386, 394 (1989). The record indicates that Plaintiff was being held in the Dallas County Jail in November, 2008, as a pretrial detainee on a charge of receiving stolen property. (Doc. 37, Ex. A). "'Claims involving the mistreatment of … pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Clause, which applies to such claims by convicted prisoners.'" Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005) (quoting Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996)). It makes no difference, however, whether Plaintiff was a pretrial detainee or a convicted prisoner because "'the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving … pretrial detainees.'" Id.; see also Purcell ex rel. Estate of Morgan v. Toombs County, Ga., 400 F.3d 1313, 1318 n.13 (11th Cir. 2005) ("'[T]he standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments.'"). "We will refer to the Amendments interchangeably, most often referring to the Eighth." Marsh v. Butler County, Ala., 268 F.3d 1014, 1024 n.5 (11th Cir. 2001).

The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. Amend. VIII. The Eighth Amendment's proscription against cruel and unusual punishment prohibits prison officials from exhibiting "'deliberate indifference' to a substantial risk of serious harm to an inmate." Farmer v. Brennan, 511 U.S. 825, 828 (1994).

In DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189 (1989), the Supreme Court summarized a state's constitutional responsibilities with regard to inmates:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. … The rationale for this principle is simple enough: when the State by the affirmative exercise of its Power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs - - *e.g.*, food, clothing, shelter, medical care, and reasonable safety - - it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

DeShaney, 489 U.S. at 199-200 (citations omitted).

In order to prevail on his conditions of confinement claim, Plaintiff must prove three elements: "(1) a condition of confinement that inflicted unnecessary pain or suffering, Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981), (2) the defendant's 'deliberate indifference' to that condition, Wilson v. Seiter, 501 U.S. 294, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991), and (3) causation, Williams v. Bennett, 689 F.2d 1370, 1389-90 (11th Cir. 1982)." LaMarca v. Turner, 995 F.2d 1526, 1535 (11th Cir. 1993).

In Sims v. Mashburn, 25 F.3d 980, 983 (11th Cir. 1994), the court described the first two elements as follows:

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

Sims, 25 F.3d at 983.

The objective component of an Eighth Amendment claim inquires whether the alleged wrongdoing amounted to the infliction of "unnecessary pain or suffering upon the prisoner." LaMarca, 995 F.2d at 1535. This standard requires that the alleged deprivation be "objectively,

8

'sufficiently serious.'" Farmer, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The objective standard "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency. . ., but must be balanced against competing penological goals." LaMarca, 995 F.2d at 1535 (quoting Estelle v. Gamble, 429 U.S. 97, 102 (1976) (internal quotation marks omitted)).

The subjective component of an Eighth Amendment claim generally "inquires whether the officials acted with a sufficiently culpable state of mind." Sims, 25 F.3d at 983-84 (citing Hudson v. McMillian, 503 U.S. 1, 8 (1992)). This component "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at 297).

In prison condition cases, the required state of mind for a defendant is "deliberate indifference" to an inmate's health or safety. Id. (citations omitted). In defining "deliberate indifference," the Supreme Court in Farmer stated:

> We hold … that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer, 511 U.S. at 837. The court concluded that the "subjective recklessness" standard of criminal law is the test for "deliberate indifference" under the Eighth Amendment. Id. at 839-40. There is no liability for "an official's failure to alleviate a significant risk that he should have perceived but did not. …" Farmer, 511 U.S. at 838. It is not enough that a plaintiff proves that the defendant should have known of the risk, conscious awareness is the key. See, e.g., Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996).

A prison official's duty under the Eighth Amendment is to ensure "reasonable safety," a standard that incorporates due regard for prison officials' "unenviable task of keeping dangerous men in safe custody under humane conditions." Farmer, 511 U.S. at 844-45 (citations omitted). "Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." Id. Having set forth the general constitutional principles applicable to this action, the Court will now address Plaintiff's specific claims.

   A.  Conditions of Confinement.

As discussed above, Plaintiff states that on November 24, 2008, Defendants Warden Goodman, and Jail Officials Steve Coleman and Lonnie Averette transferred him from A-Block to E-Block in the Dallas County Jail. (Doc. 17 at 4; Doc. 39 at 2). Plaintiff alleges that, subsequently, on the evening of November 28, 2008, six inmates "jumped on" him for no reason. (Id.; Doc. 18 at 6; Doc. 39 at 3). Plaintiff states that the inmates kicked him in the facial area for five to fifteen minutes, and he finally had to lock himself in his room to end the beating. (Doc. 17 at 4; Doc. 18 at 6). Plaintiff complains that he saw no officers in the control station, and further that the room he was in did not have a working microphone for him to call for help. (Id.; Doc. 39 at 2). Plaintiff claims that Defendants violated his right to be free from cruel and unusual punishment by failing to protect him from the attack by these fellow inmates.

While Plaintiff complains that Defendants Goodman, Coleman, and Averette transferred him from A-Block to E-Block, Plaintiff does not allege that Defendants did this with the intent to harm Plaintiff, nor that Defendants had any knowledge that Plaintiff would be in danger. Plaintiff fails to show or even to allege that any Defendant had reason to anticipate the attack.

In order to establish the objective element of an Eighth (Fourteenth) Amendment claim in a failure to protect case, an inmate must establish that the conditions under which he was incarcerated presented "a substantial risk of serious harm." Farmer, 511 U.S. at 834. It is settled that "an excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm. …" Purcell ex. rel. Estate of Morgan v. Toombs County, Ga., 400 F.3d 1313, 1320 (11th Cir. 2005) (Case involving both Eighth and Fourteenth Amendment claims; "confinement in a prison where violence and terror reign is actionable."). On the other hand, "occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment." Purcell, 400 F.3d at 1320 (citations omitted).

"[A] prison custodian is not the guarantor of a prisoner's safety." Purcell, 400 F.3d at 1321 (citations omitted). "[N]ot … every injury suffered by one prisoner at the hands of another … translates into constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 U.S. at 834. As discussed above, a prison official's duty under the Eighth Amendment is to ensure "reasonable safety." Farmer, 511 U.S. at 844.

In the present case, Plaintiff has not established that he was exposed to "the constant threat of violence" while incarcerated at the Dallas County Jail, see Purcell, 400 F.3d at 1320, or to any other condition that presented "a substantial risk of serious harm." Farmer, 511 U.S. at 834; see also Hale v. Tallapoosa County, 50 F.3d 1579, 1583 (11th Cir. 1995) ("Hale produced evidence that inmate-on-inmate violence occurred regularly" in the two years preceding the attack).

While Plaintiff has complained that he was endangered on this occasion by the lack of an officer in the control station and by the lack of a working microphone, these allegations do not

show a condition that presented "a substantial risk of serious harm." It is this Court's opinion that Plaintiff has failed to satisfy the objective element of his Fourteenth Amendment claim.

Even if, *arguendo*, Plaintiff's evidence satisfied the objective element of his conditions of confinement claim, as previously noted, he must also demonstrate that Defendants were deliberately indifferent to the risk of serious harm to him. To meet this element, Plaintiff must prove that Defendants actually knew that a substantial risk of serious harm existed, and they "knowingly or recklessly" declined to take action to prevent that harm. LaMarca, 995 F.2d at 1537. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Farmer, 511 U.S. at 838. "'Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence.'" Hale, 50 F.3d at 1583 (*quoting* Farmer, 511 U.S. at 842). "Thus, 'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" Id. (*quoting* Farmer, 511 U.S. at 842).

As noted above, Plaintiff complains of his transfer from A-Block to E-Block, implying, the Court assumes, that this attack occurred as a result of his move. (Doc. 17 at 4). This allegation, however, is meritless, as Plaintiff fails to show, or even to allege, any knowledge of a substantial risk of harm to Plaintiff on the part of Defendants. Plaintiff also alleges a lack of security, claiming that there was no officer in the control station at the moment of the attack and that his cell was lacking a working microphone. (Doc. 18 at 6). These allegations reflect not deliberate indifference, but, at best, negligence on the part of the Dallas County Jail.

While the Court notes that the attack on Plaintiff by his fellow inmates was unfortunate, it was not the result of deliberate indifference on the part of the Dallas County Jail, the Dallas

12

County Sheriff's Department, or Defendants Warden Goodman, and Dallas County Jail Officials Coleman and Averette. Further, the evidence in the record indicates that Defendants, once made aware of Plaintiff's injuries, transported him to Vaughn Regional Medical Center. (Doc. 37, Ex. B at 3, Ex. F). At Vaughn Regional Medical Center, Plaintiff was given medical care and discharged back to Dallas County Jail. (Doc. 37, Ex. F).

Plaintiff has failed to present any evidence that Defendant Warden Goodman, Defendant Coleman, or Defendant Averette were deliberately indifferent to the risk of harm to him from the other inmates. There is simply no evidence that any Defendant knew that Plaintiff was at risk of being attacked by any of the inmates. There is no evidence that any threats had been made against Plaintiff and made known to these Defendants, nor is there any evidence "that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past." Farmer, 511 U.S. at 842 (internal quotation marks omitted). The evidence indicates that this attack was isolated and unexpected. At best, Plaintiff has shown acts of negligence with regard to a possible lack of officers and a lack of working equipment, and negligence alone does not support a finding of a constitutional violation.

Because Plaintiff has failed to show that Defendants actually knew that a substantial risk of serious harm existed, i.e., that Plaintiff was at risk of being harmed by another inmate, and they knowingly or recklessly declined to take action to prevent that harm, he has failed to satisfy the subjective element of his Fourteenth Amendment claim as well. Accordingly, Defendants are entitled to judgment as a matter of law on Plaintiff's Fourteenth Amendment claim.

      B. Medical Care Claim.

Plaintiff also seeks redress in this action for an alleged constitutional deprivation arising out of the denial of medical treatment from November 29, 2008, until the filing of Plaintiff's

Complaint on February 6, 2009, for injuries he claims to have sustained during the attack by fellow inmates on November 28, 2008. (Doc. 1 at 4). "[T]he minimum standard for providing medical care to a pre-trial detainee under the Fourteenth Amendment is the same as the minimum standard required by the Eighth Amendment for a convicted prisoner; both the right to due process and the right to be free from cruel and unusual punishment are violated by a government official's deliberate indifference to serious medical needs." Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1425 n.6 (11th Cir. 1997). As discussed above, this type of claim under either the Eighth or Fourteenth Amendment is said to have an objective component, "which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind." Sims, F.3d at 983.

To meet the objective element required to demonstrate a denial of medical care in violation of the Eighth (or Fourteenth) Amendment, a plaintiff must first demonstrate the objective existence of a "serious" medical need. Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (1994), overruled in part on other grounds, Hope v. Pelzer, 536 U.S. 730, 739 n.9 (2002). "[A] 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill, 40 F.3d at 1187 (citations omitted). "[T]he medical need must be 'one that, if left unattended, pos[es] a substantial risk of serious harm.'" Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (quotation marks and citations omitted).

Also, in order to meet the required subjective element of his denial of medical care claim, Plaintiff must demonstrate "deliberate indifference" to a serious medical need. Hill, 40 F.3d at 1186.

> In <u>Estelle</u>, the Supreme Court established that "deliberate indifference" entails more than mere negligence. <u>Estelle</u>, 429 U.S. at 106, 97 S. Ct. 285; <u>Farmer</u>, 511 U.S. at 835, 114 S. Ct. 1970. The Supreme Court clarified the "deliberate indifference" standard in Farmer by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 837, 114 S. Ct. 1970 (emphasis added). In interpreting <u>Farmer</u> and <u>Estelle</u>, this Court explained in <u>McElligott</u> that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." <u>McElligott</u>, 182 F.3d at 1255; <u>Taylor</u>, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

<u>Farrow</u>, 320 F.3d at 1245-46 (emphasis in original).

In this action, the record reflects that Plaintiff was treated on November 29, 2008, at Vaughn Regional Medical Center for injuries sustained in the assault by his fellow inmates on November 28, 2008. (Doc. 37, Ex. B at 3, Ex. F). The Vaughn Regional Medical Center records reflect that Plaintiff was given a prescription for the pain medication Lortab by the Emergency Room physician. (Doc. 37, Ex. F at 8). Following his discharge back to the Dallas County Jail on November 29, 2008, Plaintiff made no requests for medical care until May 20, 2009, when he submitted a "Prisoner Request Form," asking to see the doctor "A.S.A.P." for a "very bad cold," and Plaintiff was treated by the doctor the very same day. (Doc. 37, Ex. B at 3; Ex. H).

Neither his medical records nor his inmate file reflect any request for further treatment of any alleged facial fracture, or for medication for pain stemming from any injury sustained in the attack on November 28, 2008. (Doc. 37, Exs. F, I). "When a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." <u>Waldrop v. Evans</u>, 871 F.2d 1030, 1035 (11th Cir. 1989). Further, Plaintiff has submitted no "verifying medical evidence" showing that any alleged failure to receive follow up medical treatment worsened or exacerbated his medical condition. <u>Hill</u>, 40 F.3d at 1188 (emphasis added).

15

Assuming, *arguendo*, however, that these Defendants did deny Plaintiff medical treatment for his alleged facial fractures associated with the attack by the fellow inmates, Plaintiff's claim still fails as a matter of law.

In this case, Plaintiff has failed to present any evidence, or even allege facts, showing that his injuries constituted a "serious medical need." Hill, 40 F.3d at 1187. Thus, Plaintiff has failed to meet the objective element of his denial of medical care claim. Moreover, Plaintiff has failed to present any evidence, or even allege facts, showing that Defendants knew of an excessive risk to his health if there was no follow up treatment to the initial treatment for his injuries, and they disregarded that risk by conduct that was more than mere negligence. Farrow, 320 F.3d at 1245, 46. Thus, Plaintiff has failed to meet the subjective element of his denial of medical care claim. For each of these reasons, Plaintiff's claim based on Defendants' failure to provide medical treatment for the injuries sustained in the November 28, 2008, inmate attack fails as a matter of law.

        C.      No Causal Connection.

In addition to the foregoing, summary judgment is due to be granted in favor of Dallas County Jail Warden Roger Goodman, and Dallas County Jail Officials Steve Coleman and Lonnie Averette because Plaintiff has failed to show how these Defendants' actions contributed to his alleged deprivations. See LaMarca, 995 F.2d at 1538 ("[S]ection 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation.") (internal quotation marks and citations omitted). [9] Given the absence of evidence showing that any Defendant's actions contributed directly to

---

[9] Again, the Court notes that Defendants Dallas County Jail and Dallas County Sheriff's Department have not been served in this action; however, having found no constitutional violation herein, the Court has determined that this action is due to be dismissed in its entirety.

Plaintiff's claims, each Defendant is entitled to judgment as a matter of law for a lack of causation as well as the reasons stated above.

## IV. CONCLUSION

Based on the foregoing, the Court concludes that Defendants, Dallas County Jail Warden Roger Goodman, Dallas County Jail Officials Steve Coleman, and Lonnie Averette are entitled to summary judgment in their favor on all claims asserted against them by Plaintiff. Accordingly, it is recommended that Defendants' Motion for Summary Judgment be GRANTED, that this action be DISMISSED with prejudice, and that judgment be entered in favor of all Defendants and against Plaintiff on all claims.

The attached sheet contains important information regarding objections to this recommendation.

DONE this __6th__ day of August, 2010.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

# MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND <u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[10] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

>                                            /s/ Katherine P. Nelson
>                                            UNITED STATES MAGISTRATE JUDGE

---

[10] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed. R. Civ. P. 72(b)(2).